Vacated by Supreme Court, January 24, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

KEVIN A. RIDEOUT, a/k/a JD,
  *Defendant-Appellant.*

No. 02-4302

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Frederick P. Stamp, Jr., District Judge.
(CR-00-7)

Argued: September 26, 2003

Decided: November 13, 2003

Before WILKINS, Chief Judge, and
HAMILTON, Senior Circuit Judge.*

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** Jeffrey Alan Holmstrand, MCDERMOTT & BONEN-
BERGER, P.L.L.C., Wheeling, West Virginia, for Appellant. Sherry
L. Muncy, Assistant United States Attorney, Clarksburg, West Vir-
ginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States
Attorney, Clarksburg, West Virginia, for Appellee.

---

  *This appeal is decided by Chief Judge Wilkins and Senior Judge
Hamilton as a quorum.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Kevin A. Rideout appeals his convictions and sentences for several drug-related offenses. Finding no reversible error, we affirm.

### I.

The drug crimes at issue here occurred in Keyser, West Virginia, in an area known as "the Hill." This area was described by one witness as an "open air crack market." J.A. 238. Rideout was one of 20 individuals named in an indictment charging, *inter alia*, one count of conspiracy to possess with the intent to distribute and to distribute unspecified quantities of cocaine and cocaine base in violation of "Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(iii)" ("the conspiracy count"), *id.* at 28, and several counts of distributing cocaine base.

At trial,[1] numerous witnesses testified to having purchased cocaine base from Rideout and to having seen him regularly selling on the Hill. Many testified that Rideout served as a runner for other drug dealers. Codefendant Shaun Brooks testified that Rideout had sold for him on the Hill as well as for "a lot more guys." *Id.* at 566. Another witness testified that on at least 20 occasions, he gave Rideout money on the Hill and then watched Rideout enter an American Legion Building ("the Legion") and emerge with cocaine base.

The lead agent investigating the distribution of cocaine base on the Hill was Senior Trooper Robert E. Cooper of the West Virginia State Police. He testified that he recorded hours of audio and video during the investigation. He then prepared a composite video that lasted

---

[1]Five of the defendants went to trial, 12 others pled guilty, two were fugitives at the time of trial, and one died while the case was pending.

approximately six hours. The video consisted of "shots of what life was like in this community around the Legion, uncontrolled buys, [and] controlled buys." *Id.* at 226. During portions of the video, Cooper could be heard commenting on the activities being filmed. Rideout did not object to presentation of the video portion of the composite tape, but he did object to the playing of the audio, which included Cooper's narration. The court overruled the objection, concluding that the narration was admissible as present sense impressions. *See* Fed. R. Evid. 803(1) (permitting the admission of hearsay when it involves a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter").

One prosecution witness, Amber Hott, who was being held prior to trial in the same detention facility as Rideout, testified that one day when she saw Rideout, he "[p]ut his hand to his throat and acted like he was going to cut my throat, called me a snitch." J.A. 516. When asked when the threat was made, Hott answered that it was five or six days before her testimony. Rideout subsequently presented evidence that he was transferred from the detention facility where the threat allegedly took place eight days prior to Hott's testimony.

At the close of all of the evidence, the parties discussed the content of the jury charge with the district court. Regarding each distribution count in which he was named, Rideout requested a jury charge of simple possession as a lesser included offense. The district court refused to charge simple possession, however, concluding that simple possession is not a lesser included offense of distribution. On the subject of drug quantity, the district court instructed the jury that, in order to convict on any of the charged offenses, it did not have to find that the offense involved the amount of cocaine base alleged in the indictment. However, the court also instructed that if the jury found one or more of the defendants guilty of the conspiracy charge, it was required to determine whether the relevant threshold amounts were proven beyond a reasonable doubt.

Rideout was convicted of the conspiracy count and the three distribution counts in which he was named.[2] The jury found in a special

---

[2]Rideout had been named in another distribution count that was dismissed because, due to a typographical error, it charged that Rideout distributed cocaine base "lawfully" rather than "unlawfully." J.A. 50.

interrogatory that the conspiracy involved at least 50 grams of cocaine base. Rideout subsequently moved unsuccessfully for judgment of acquittal or, in the alternative, for a new trial. With regard to the motion for new trial, the court ruled that Cooper's narration on the composite video did not warrant a new trial because the court had "ordered narration of the tape to be muted at certain times" and, in any event, the narration amounted to present sense impressions. *Id.* at 684.

At sentencing, the presentence report recommended a finding that Rideout's offenses involved 64.39 grams of cocaine base. The Government argued that a greater quantity was at issue, while Rideout urged the court to "adopt the determination of the probation officer." *Id.* at 636. The district court rejected the Government's arguments and adopted the recommendation from the presentence report. The court then enhanced Rideout's base offense level for obstruction of justice based on the threat made against Hott, yielding a total offense level of 34. Rideout was sentenced to 262 months imprisonment on the conspiracy count and 240 months on each of the three substantive counts, all to be served concurrently.

## II.

Rideout first argues that the use by the district court of a special interrogatory to allow the jury to calculate the drug quantity involved in the conspiracy constructively amended the indictment, which did not allege a particular drug quantity.[3]

Because this argument is raised for the first time on appeal, we review for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). In order to establish our authority to notice an error not preserved by a timely objection, Rideout must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See Olano*, 507 U.S. at 732. Even if Rideout can satisfy these requirements, correction of the error

---

[3]In fact, the indictment cited 21 U.S.C.A. § 841(b)(1)(A)(iii) (West 1999 & Supp. 2003) in the conspiracy count, which arguably put Rideout on notice that the alleged drug quantity was at least 50 grams of cocaine base. For purposes of this appeal, however, we assume that the threshold drug quantity was not sufficiently alleged.

remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (second alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

Even assuming that the first three elements of plain error review are satisfied, *United States v. Cotton*, 535 U.S. 625 (2002), precludes the panel from noticing the error. As in *Cotton*, the evidence here that the conspiracy involved at least 50 grams of cocaine base was "overwhelming and essentially uncontroverted," and Rideout did not assert that he was responsible for less than the threshold amount, even at sentencing. *Cotton*, 535 U.S. at 633 & n.3 (internal quotation marks omitted). Indeed, Rideout actually requested that the district court adopt the probation officer's determination that he was responsible for 64.39 grams of cocaine base. Under these circumstances, "[t]he real threat . . . to the fairness, integrity, and public reputation of judicial proceedings" would be if Rideout, despite his concession that he was responsible for more than 50 grams, "were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 634 (internal quotation marks omitted).[4]

### III.

Rideout next complains that the district court erred in charging the jury that it did not need to find drug quantity in order to convict.[5]

---

[4]In a related argument, Rideout maintains that the district court improperly sentenced him based on a drug quantity of 64.39 grams of cocaine base when that amount was not pleaded in the indictment, found by the jury, or supported by the evidence. Because Rideout specifically asked the district court to adopt the 64.39-gram weight recommended by the probation officer, any error in the adoption of that recommendation was invited by Rideout, and therefore should not be noticed by this court. *See United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994).

[5]The charge stated as follows:

> The indictment alleges that a particular amount of cocaine base was involved. The evidence in the case need not establish that the alleged amount of cocaine base existed; rather, the evidence needs to show only that a measurable amount of cocaine base was in fact the subject of the acts charged.

J.A. 176.

Because this issue is raised for the first time on appeal, our review is for plain error. *See Olano*, 507 U.S. at 731-32.

With regard to the substantive counts, the instruction that the jury could convict without finding drug quantities was correct since the indictment did not charge threshold drug quantities.[6] With regard to the conspiracy count, even assuming that the charge was plainly erroneous, the error did not affect Rideout's substantial rights because the jury made the requisite threshold quantity finding.

IV.

Rideout next contends that the district court should have excluded, as unreliable, evidence of the alleged threat to witness Amber Hott. Because Rideout did not object in the district court to the admission of the evidence, review is for plain error. *See id.* Here, Rideout cannot even establish the first plain-error requirement, that the court erred in admitting the evidence.

Federal Rule of Evidence 404(b) provides that evidence of prior bad acts may be admissible for purposes other than "to prove the character of a person in order to show action in conformity therewith." "Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404(b), if the evidence (1) is related to the offense charged and (2) is reliable." *United States v. Hayden*, 85 F.3d 153, 159 (4th Cir. 1996). Rule 404(b) decisions are not reversed unless they are "arbitrary or irrational." *United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990) (internal quotation marks omitted).

Rideout argues that the evidence here was unreliable because Hott testified the threat was made five or six days prior to her trial appearance, yet subsequent testimony established that Rideout had been moved from the detention facility where Hott was also confined eight days before Hott testified. However, because the testimony that Ride-

---

[6]The quantities alleged in the substantive counts were all less than one gram. Five grams is the lowest quantity of cocaine base that can result in a statutory sentence enhancement. *See* 21 U.S.C.A. § 841(b)(1)(B)(iii) (West 1999 & Supp. 2003).

out had been moved prior to the time he allegedly threatened Hott had not been presented when Hott's testimony was admitted, it could not possibly have provided a basis for excluding Hott's testimony. Moreover, even assuming that it had been established by the time Hott testified that Rideout had last been in the detention facility eight days earlier—rather than six—that might have signified only that Hott was mistaken concerning the date of threat. That discrepancy would not justify excluding the evidence.[7]

## V.

Rideout also challenges the refusal by the district court to charge simple possession as a lesser included offense of distribution, claiming that the court erred in concluding that possession was not a lesser included offense. Reviewing this issue de novo, *see United States v. Nichols*, 9 F.3d 1420, 1421 (9th Cir. 1993) (per curiam), we agree with the district court.

One offense is a lesser included offense of another only if "the elements of the lesser offense are a subset of the elements of the charged offense." *Schmuck v. United States*, 489 U.S. 705, 716 (1989). In comparing the two offenses, a court must consider only their statutory elements. *See id.* at 716-17. Simple possession, a violation of 21 U.S.C.A. § 844(a) (West 1999), requires: (1) knowingly and intentionally (2) possessing (3) a controlled substance. *See United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985). In contrast, distribution, a violation of 21 U.S.C.A. § 841(a) (West 1999), requires that a defendant: (1) knowingly and intentionally (2) distribute (3) a controlled substance. *See United States v. Randall*, 171 F.3d 195, 209 (4th Cir. 1999). As many courts have held, the elements of simple possession are not a subset of the elements of distribution because someone who contributes to a drug transaction by "arranging or supervising the delivery, or negotiating for or receiving the purchase price" can be guilty of distribution without ever having possessed the controlled substance, constructively or otherwise. *United States v.*

---

[7]Rideout also claims Hott's testimony was unreliable because it was uncorroborated. However, the simple fact that evidence is uncorroborated does not mean that it is unreliable. *See United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993).

*Colon*, 268 F.3d 367, 377 (6th Cir. 2001) (collecting cases). *But see United States v. Howard*, 507 F.2d 559, 561 n.4 (8th Cir. 1974) (stating, without discussion, that possession elements are subset of distribution elements). We agree with this analysis and hold that the district court correctly concluded that simple possession is not a lesser included offense of distribution.

VI.

Rideout next argues that the district court erred in refusing to direct a verdict of acquittal on the conspiracy count because "[a] buyer-seller relationship i[s] insufficient to form the basis for a conspiracy conviction."[8] Opening Br. of Appellant at 36. We find no error.

In reviewing a sufficiency challenge, our role is limited to considering whether "there is substantial evidence, taking the view most favorable to the Government, to support" the verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942). We must bear in mind that "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented," and that "if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994). Reversal for insufficient evidence is reserved for cases in which "the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

To prove conspiracy to possess cocaine and cocaine base with the intent to distribute, the Government must establish that "(1) an agreement to possess cocaine [and cocaine base] with the intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily

---

[8]At oral argument, Rideout also contended that the evidence in the record, if sufficient to show a conspiracy, was sufficient only to show multiple conspiracies rather than the single, overarching conspiracy alleged in the indictment. Because Rideout did not include this argument in his brief and no special circumstances excuse his failure to do so, the argument is not properly before us. *Cf. United States v. Lewis*, 235 F.3d 215, 218 n.3 (4th Cir. 2000) (explaining that issues first raised in reply briefs ordinarily are not addressed).

became a part of the conspiracy." *United States v. Wilson*, 135 F.3d 291, 306 (4th Cir. 1998) (internal quotation marks omitted). Here, many witnesses described the drug sales on the Hill, which was characterized as an open air crack market. Codefendant Shaun Brooks testified that Rideout had sold for him and "a lot more guys." J.A. 566. Many other witnesses stated that Rideout acted as a runner for other drug dealers. That testimony was sufficient to support a reasonable conclusion that Rideout agreed with several other people to possess with the intent to distribute, and to distribute, cocaine base. The district court correctly refused to direct a verdict of acquittal on the conspiracy count.

## VII.

Rideout next maintains that the following charge was given in error to the jury:

> The combination of circumstantial and direct evidence that many dealers worked in front of the Legion at a given time; *that they took turns approaching cars*; that the many sellers were supplied by the same few suppliers; and that the dealing in front of the Legion occurred in a similar manner over a period of time may support a finding that a conspiracy to distribute cocaine base existed.

*Id.* at 166 (emphasis added). Rideout does not argue that the charge was legally incorrect, but rather contends that it was inapposite here because it was not supported by evidence. Rideout notes in particular that Cooper testified that he witnessed an incident in which an automobile pulled up on the Hill and several drug dealers "raced each other over to the car and leaned into the window and were selling." *Id.* at 288.

We find no reversible error. The challenged instruction offered one possible basis for conviction. To the extent that the evidence did not support a conviction on this basis, the error in giving the instruction was harmless, as the absence of evidence negated any possibility that the jury would rely on this instruction. *See Bullard v. United States*, 245 F. 837, 839 (4th Cir. 1917) (in prosecution for illicit distilling, holding no prejudice from instruction improperly stating that convic-

tion could rest on finding that defendant distilled intoxicants other than corn whiskey because there was no evidence that would support such a finding).

## VIII.

Rideout next argues that the district court erred in allowing the jury to hear Cooper's narration on the composite videotape. We hold that the record reveals no such error.

We review the admission of evidence by the district court for clear abuse of discretion. *See United States v. Jackson*, 124 F.3d 607, 618 (4th Cir. 1997). Federal Rule of Evidence 803(1) permits the admission of hearsay when it involves a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Here, Rideout has given us no reason to doubt that any narration heard by the jury fit within this rule. Accordingly, we find no error in the denial of Rideout's blanket objection.

To the extent that Rideout contends that particular statements made by Cooper on the videotape and heard by the jury were inadmissible, Rideout failed to preserve that contention by objecting to the statements specifically or even ensuring that the statements were reflected in the transcript. *See* Fed. R. Evid. 103(a)(1) (stating that no error may be predicated on a ruling admitting evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"); 1 *Weinstein's Federal Evidence* § 103.31[4] (2d ed. 2003) ("To preserve for appeal any ruling on non-testimonial evidence or other events, . . . the aggrieved party must make an appropriate objection . . . and ensure that the event, the objection . . . , and the court's ruling appear on the record."). Because the objection is not preserved, review is for plain error only. *See Olano*, 507 U.S. at 731-32. And, on plain error review, Rideout can show neither that a plain error occurred nor that he was prejudiced thereby.

## IX.

In sum, for all of the above-mentioned reasons, we find no reversible error. We therefore affirm Rideout's convictions and sentences.

*AFFIRMED*